The next case this morning is People v. Reichert, 518-0537. Arguing for the appellant, Christian Reichert, is Richard Whitney. Arguing for the appellate, People of the State of Illinois, is Michael Lennox. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, your honor. Appreciate your patience. We were running a little late, having a little audio problems on our end, so thank you for that. Mr. Whitney, are you ready to proceed? I am, your honor. Then go right ahead. All right. Thank you, your honor. Good morning, your honors. May it please the court, counsel. Richard Whitney for defendant appellant, Christian Reichert. Your honors, we raised two principal issues in this appeal. First, the state gratuitously saturated the entire trial with irrelevant and highly prejudicial evidence of the shooting of a police officer. Even though Mr. Reichert was not involved in that shooting, the offenses for which he had been charged had already been completed and had nothing to do, the shooting had nothing to do with the elements of those offenses. The second issue is that the trial court committed reversible error when it denied his motion to suppress his confession, even though police continued interrogating him after he twice invoked his right to remain silent. Now, unless the court prefers otherwise, I would actually like to focus primarily on the latter issue, frankly, because the merits of the from the pages of the trial record. Essentially, the state centered the jury's attention on the shooting of officer Trey Harris, literally from the beginning to the end of the trial, even though the shooting was entirely peripheral to the offenses for which Mr. Reichert had been charged. It was not of consequence to the determination of the action. Therefore, it was irrelevant. But with respect to the suppression issue, Mr. Reichert made two unmistakable statements invoking his right to remain silent, which under the law and under our constitution required the police to cease the interrogation immediately, yet they did not do so. The only wrinkle here is that he did couch his first invocation of that right in a request to go off the record. However, that argument does not hold up for two reasons. First of all, because Mr. Reichert knew that the interrogation was being recorded, what he was actually doing was setting a condition for continuing to speak, not contradicting his invocation of the right to remain silent. And then secondly, his second invocation of that right was not equivocal at all. He said, I'm not saying anything right now, though. And under settled law, as illustrated by the strong, the Flores and the Hernandez cases cited in the briefs, that simple expression, double negative and all, was clear enough to have halted the interrogation. The takeaway from these cases is that as long as the suspect used language indicating that he no longer wished to speak to the police, that requires police to scrupulously honor the request and cease the interrogation, and they can only continue the interrogation under the four-step criteria outlined by this court back in the Welch case, as cited in the briefs. You look at these cases. You look at the strong case. The defendant there said simply, I don't want to say anything more. You look at the Flores case. In response to a question, the defendant said, do you want to continue talking? The defendant said, not really, no. And then even if that was considered to be equivocal, he a few moments later said, I ain't going to say nothing about nothing. Almost identical to the language used by Mr. Reichert in this case. And the court in Flores said actually both of those invocations of the right to remain silent were sufficient. And then you look at the Hernandez case, a vague, pretty vague statement in the midst of an interrogation, no, not more. Even that was held to be sufficiently clear and unequivocal, invoking the right to remain silent, that the court found that it was sufficient and held that the confession should be suppressed. We have that here. I think what happened in this case, frankly, your honors, is that the trial court became so focused on the conditions of the interrogation. Did he have enough, you know, because it was long, it's over three days. That was very prominent in the motion to suppress hearing. The court was considering, you know, geez, you're questioning him for 12 hours. Did he get enough breaks? Did he get enough food and water? Did he get enough restroom breaks? All these kinds of things. And the court became focused on that, but unfortunately missed the more fundamental and basic question about did he sufficiently invoke his right to remain silent? And frankly, are there any Illinois cases that say a condition on continuing to speak is an unambiguous invocation of the right to remain silent? Not that is directly on point with that, your honor, no. So I do understand that. And I understand that that's why the state makes that argument. But nonetheless, the fact that there was a second invocation that was not equivocal, you know, afterwards, that I think that that satisfies the requirement that he sufficiently invoked his right to remain silent under the case law that was cited in the briefs. Thank you. Now, the state in its brief cites to the Berghias case out of the Seventh Circuit, but that clearly is an apposite. It clearly does not apply. And you don't because that concerned whether or not a defendant who did not invoke his right to remain silent at all still sufficiently waived it. So it looked at the other conditions of the interrogation. Did he understand his Miranda rights, et cetera? You don't waive the right by continuing to talk that that does not apply here. If you invoke the right, continuing to talk, it does not waive the right. Otherwise, there'd be nothing to suppress. They always continue to talk, right? And as every member of this panel, I'm sure clearly knows from their own extensive experience, this is what happens, right? Defendant swears, yes, I understand the right to remain silent, signs the Miranda form. Yes, I get it. But doesn't actually understand the right to remain silent and continues to talk. If they didn't continue to talk, we'd have no motion to suppress. So you don't waive it by continuing to talk. That is not the law. Burgess does not stand for that proposition. That does not support the state's argument for affirming the trial court. If there's no further questions on the suppression issue, I would like to briefly speak to issue number one, namely the admission of a lot of irrelevant and highly prejudicial evidence regarding the shooting of officer Trey Harris. Mr. Reichert was charged with conspiracy to possess with intent to deliver cannabis, not conspiracy to commit a violent act, let alone shoot a police officer. The only explicit act in furtherance of the conspiracy with which he was charged was the renting of a home for purposes of storing the cannabis in 2016, in June of 2016. Officer Harris was shot on July 31st, 2016. There's no act of further, you know, there was no act in furtherance of the conspiracy to rent the house in 2016. He was basically the evidence for which he participated in the conspiracy concern, his transporting the cannabis from Oregon into Williamson County, putting it in a stash house in Williamson County in June, 2016. And then the distribution in Jackson County, which occurred on July 27th, 2016. It was over by July 31st, 2016, when officer Harris was shot. And yet, very first sentence in the opening argument, very last sentence in the closing argument, first six witnesses, about 80 exhibits, more or less, were all devoted to the shooting of Officer Harris, even though it was completely irrelevant to the actual charges for which Mr. Riker had been charged, as far as the conspiracy was concerned. It was entirely peripheral. And obviously, it was highly prejudicial, because here you had a police officer coming in, I can hardly imagine many things more horrific than being shot in the eye. And obviously, this was a peace officer who acted very heroically under the circumstances. It was designed, this testimony and all of that evidence was designed to tug at the heartstrings of the jury, but it was not relevant to the actual charges for which Mr. Riker had been convicted. And therefore, it was plain error and should require reversal. For these reasons, Your Honor, Your Honors, if there's no further questions, we ask that the conviction of Mr. Riker be vacated and this cause remanded. Thank you. Thank you, Counsel. Justice Vaughn or Justice Welch, do you have any questions? I have a question. I understand at the time of the shooting, the delivery was completed, but there was some issue about drugs taken without payment and getting the car and going around to get some people and all that. That's related to the collection of the money for the delivery. So the delivery was completed, but wasn't this transaction still ongoing at the time of the shooting as far as collection of money and seeking revenge for ripoff and that kind of thing? Isn't it all part of the same transaction? Not the same transaction for which Mr. Riker was charged. I understand Your Honor's point that, yes, there was continued fallout from this. And basically, some of the co-conspirators were involved in ongoing actions intended to, I guess, preserve their investment or however you want to that part of the conspiracy. He was only charged with ferrying the cannabis from Oregon into Illinois and renting the stash house. All of that was completed long before the shooting occurred. Thank you. Thank you, Your Honor. Anything else, Justice Welch? All right. Obviously, Mr. Whitney, you'll have your rebuttal time. Mr. Lennox, go right ahead. Thank you, Your Honor. Good morning, opposing counsel, Your Honors, and may it please the court. My name is Michael Lennox, and I represent the state in this matter. This court should affirm the defendant's conspiracy to possess with intent to deliver cannabis and trafficking cannabis conviction, first, because the lower court did not abuse its discretion when it allowed in evidence of Officer Trey Harris being shot by the defendant's co-conspirators during the course of the defendant's conspiracy because the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, and second, because the defendant did not invoke his right to remain silent, and if the court finds the defendant did indeed invoke that right to silence, then he immediately waived that right by continuing to speak after the alleged invocation. In reference to my first point for relevance and prejudice, there are a few facts from this case that are necessary to couch the first issue. Brandon Jones was the head of the localized drug dealing organization that the defendant was a part of. The defendant went with Jones to Oregon to assist him in transporting over $100,000 to Oregon and 107 pounds of cannabis back to Illinois. A few days later, the defendant rented a house for he and his co-conspirators to use as a stash house for their copious amounts of cannabis. A few weeks after that, Jones was ripped off of 15 pounds of cannabis. Immediately following, Jones contacted the people he was receiving cannabis from in Oregon about him being ripped off. Four men, two of which the defendant had previously met, came to Illinois with three AR-15s and three pistols, and the defendant knew the plan was that the four men would kill or severely injure the individuals that quote-unquote ripped off Jones. The four men stayed at the defendant's stash house while they were in town. The defendant purchased a used white Pontiac for the four men to use to violently confront the individuals that ripped off Jones. The defendant gave a false name when he purchased the used white Pontiac. The defendant helped steal license plates for the white Pontiac, and William Cummins testified that his cannabis purchasing from the defendant and his co-conspirators slowed after Officer Harris was shot. He did not say that it stopped. The issue of the lower court allowing evidence in of Officer Trey Harris's shooting is reviewed for an abuse of discretion standard, and a trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable man would take the view adopted by the trial court. Despite the defendant's best efforts, he cannot satisfy this heightened standard of review for relevance or the prejudicial effect of the evidence. In reference to the relevance, your honors, relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Further, evidence is relevant if its purpose is to provide context for other evidence. Your honors, Officer Harris's However, Officer Harris's shooting is relevant to the defendant's conspiracy count. The shooting of Officer Harris is relevant to the defendant's conspiracy count in that it has a tendency to prove the defendant's knowledgeable agreement and active participation in the conspiracy of possession with the intention to deliver cannabis. The defendant knew why the four men came to town to send a message to the three individuals who, quote-unquote, ripped off Jones and anyone else who considered it. The defendant knew the car was going to be used in a violent crime, which is why he gave a false name to the seller and helped one of these individuals steal the license plates rather than simply purchase some. The defendant knew the four men were armed and what Jones's intention for them was to kill or seriously injure the three firing rounds at police is just as much a part of the drug dealing conspiracy as the defendant was a part of as reacting with extreme violence to the individuals that stole from them. Both actions were made in an attempt to further this drug dealing conspiracy. Without the defendant's involvement, the four men would not have had a place to leave their firearms, a car to engage in drive-by and in the drive-by and subsequently a high-speed chase and police shooting, or license plates to make the vehicle and the owner more difficult to track. Further, the conspiracy to possess with intent to deliver cannabis did not cease prior to or at the or at the shooting of Officer Harris. Notably, William Cummins, a customer of the defendant and his co-conspirators drug dealing business, stated that his cannabis purchasing slowed after Officer Harris was shot, not that it stopped. The fact that the co-conspirators were still selling cannabis after the shooting of Officer Harris shows that the conspiracy was not terminated as the defendant suggests. And though the defendant cites to some alleged incongruence in the state's brief and argument at trial in his reply brief, the difference between the defendant's opening brief and his reply brief houses within it an important concession. The defendant's opening brief concentrates on a charging, on charging a co-conspirator for acts committed in furtherance of the conspiracy and committed during the pendency of the conspiracy. The defendant concedes in his reply that the cannabis continued to be stored in the quote-unquote stash house until August 2nd, 2016, three days after the shooting on July 31st, 2016, clearly within the pendency. The defendant also conspicuously does not address the testimony from William Cummins that the drug dealing conspiracy was still operating after the and also this case is similar to U.S. v. Neely where the court held that the lower court did not abuse its discretion and the shooting of members of a drug conspiracy was relevant in reference to prejudice, your honors. All relevant evidence offered at trial is prejudicial when offered for the purpose of proving the defendant's guilt. The relevant inquiry is if the probative value of the evidence is outweighed by the prejudicial effect. The shooting of Officer for the same reason that it's relevant. The shooting shows that the defendant's knowledgeable agreement and active participation in the conspiracy of possession with intention to deliver cannabis. Further, the evidence of the shooting was not unfairly prejudicial and U.S. v. Neely is once again instructive here. In Neely, the court found evidence of a shooting was not prejudicial in a drug conspiracy case where the shooter was not named, testimony on the shooting was brief, and the evidence of the shooting merely gave the jury a complete picture of the ongoing conspiracy. Here, too, the shooter was not named. Officer Harris's testimony was brief, utilizing flat and colorless language. The dash cam footage of the shooting was difficult to see. There were no images or video of the officer's injury provided to the jury, and notably, Officer Harris was alive and well giving his testimony. This court, too, should find that the allowance of the evidence was not an abuse of discretion and the evidence merely provided a full picture to the jury. In reference to the silence argument, Your Honor, at all points the defendant could be considered, at all points of the defendant could be considered to invoke his right to remain silent, he did so within the context that he wanted to speak off the record, not that he did not want to speak at all. First, the defendant said, can we get off the record then, because I'm not going to say anything else on the record, and that's the honest God's truth. He then said, you don't understand, you don't understand, no, you don't understand. One officer explained to him why she did not want to go off the record, stating that she did not want the chance to accidentally misconstrue what was being said during the interview, and the defendant, who was speaking again after he said he did not want to say anything on the record, said he would not say anything else on the record. Then he also said, I'm not saying anything right now, but then the defendant immediately says, I'm freaked out, you don't understand. When the officer suggested that he take a breath, seemingly attempting to stop the interview, the defendant continued to talk, saying that it had always been his dream to be an undercover officer and that he had key pieces of the major organization down. He also said he wanted to go to the other side, referring to law enforcement, and again, the officer was saying that they should take a deep breath, but again, the defendant, who said that he didn't want to speak on the record, continued to speak on the record, and your honors, I see that my time is up, so I'd rest on my brief for the rest. Go ahead and finish your thought or your sentence. The defendant now asserts that the trial court, allowing in this interview with police, constituted plain error, or the defendant's trial counsel was ineffective for not preserving the issue of the defendant's invoking his right to remain silent, but the defendant did not invoke his right to remain silent, therefore no error exists. Further, if this court finds that the defendant repeatedly and expeditiously waived his right through an implicit waiver. Thank you, your honors. Thank you, counsel. Justice Welch or Justice Vaughn, do you have any questions for Mr. Lennox before we move to Mr. Whitney's rebuttal? No questions. No questions. All right, thank you, counsel. Go right ahead, Mr. Whitney. Thank you, your honors. It appears that the makes the existence of a fact of consequence to the determination of the action more or less probable. What is the action at issue here? The action at issue here, what the state had to prove with respect to the conspiracy charge was that Mr. Reichert agreed with co-conspirators to possess with intent to deliver cannabis, that he did so with the intent that the possession be committed. An act in furtherance of that agreement was performed by any party to the agreement and the substance containing the cannabis weighed more than 5,000 grams. That's what the state had to prove here. So we have to ask ourselves, did the shooting of Officer Harris make it more probable or less probable that Mr. Reichert conspired and agreed with persons to possess and distribute more than 5,000 pounds of cannabis? I think the answer is clearly no. It did not make it more or less probable. That was different evidence that established that. Did it make it more or less probable that Mr. Reichert bought a home in Williamson County the previous month to be used as a staging area for the storage? Well, clearly the answer to that is no. The shooting of Officer Harris came well after that occurred. Did it make it more probable that the conspirators stored the home? No, it was already stored at the home. It had been stored there for, you know, a month or more. Did it make it more probable that some of the cannabis was then transported and sold in Jackson County four days prior to the shooting? Well, of course not. The shooting is something that happens four days later, does not make it more probable that the event occurred four days earlier. The action here is the key. This was not the action with which the series of actions with which Mr. Reichert was charged. It was entirely gratuitous. And you can even look, as we called attention to in the state's brief, look at how the state argued it in closing argument. Yes, it did talk about the shooting in closing argument, but not when it came to proving up the acts and furtherance of the conspiracy. The acts and furtherance of the conspiracy that the state talked about in closing argument, in order to convince the jury that it had satisfied those elements, was that Mr. Reichert went out to Oregon, helped load up the cannabis, brought it back, worked with co-conspirator Cummins to that he knew that he had to bring the cannabis back, that it had to be stored, and that he rented the home. Nothing about the shooting when it came down to actually proving that up, that element in the acts and furtherance. This further illustrates that all of that evidence was entirely gratuitous. And as for it being brief, well, that's clearly not the case. It wasn't just, you know, Officer Harris, yes, he presented himself very stoically. He didn't really talk about detail about him being hurt, but there's still 32 pages of the transcript. He still told the story of the shooting itself and the chase twice, first without the video, then with the video. And again, the first six witnesses talking about nothing but the shooting. That's not brief. As far as the state's reliance on the Neely case, Neely is an apposite, precisely because in that case, what the defendants were charged with did have something to do with the fact that they were shot out by other criminals. And that is they were charged with possessing firearms during and in relation to the cocaine's conspiracy. The evidence was knowingly possessed the firearms for that purpose, right? It basically showed motive on their part. We don't have that here. There is nothing about the shooting of Officer Harris that makes it more likely that Mr. Reichert participated in a conspiracy to bring cannabis back from Oregon and hide it in a stash house. And as far as the admission goes that counsel referred to, the only thing that's admitted here is, yes, the cannabis continued to be stored, but the renting of the house had already occurred. The storage had already occurred. That's not an act in furtherance of the conspiracy. Cannabis sitting in a home for another couple of days is not an act. It's simply referring to the facts accurately. I see that my time has expired again. We respectfully ask that this court reverse the decision of the court below and remand this case for a new trial and proceedings. Thank you. Well, thank you, counsel. Obviously, we will take the matter under advisement and issue an order in due course. I believe that concludes our court proceedings today, and we will stand in recess until nine o'clock tomorrow. Counsel, you guys have a great day.